GRIFFIS, J.,
for the court.
¶ 1. G.L.H., a minor, was charged with simple assault and found to be a delinquent child. On appeal, G.L.H. asserts the following issues: whether the youth court’s order finding him guilty of simple assault was in error, and whether the youth court’s refusal to allow the appeal to proceed with supersedeas constitutes a denial of due process and an abuse of discretion. Finding no error, we affirm.
FACTS
¶2. On December 22, 2000, G.L.H., a minor, was employed at Captain D’s restaurant in Tupelo and was working the evening shift. Murry F., a minor, entered the restaurant that evening and sat down with some friends. There was contradicting evidence about exactly what happened that evening. At some point, a number of individuals, including G.L.H. and Murry F., left the restaurant and went outside. Murry F. was standing with the group in a grassy area near a retaining wall with a steep drop off. G.L.H. admits that he pushed Murry F. causing him to fall over a retaining wall. Murry F. was severely injured as a result of the fall. His neck was crushed, and he is now paralyzed. G.L.H. was charged with simple assault.
¶ 3. On July 26, 2001, the Lee County Youth Court judge issued an order stating that sufficient facts existed to warrant the filing of a formal petition in youth court to *111 determine if the allegations against G.L.H. could be proven beyond a reasonable doubt. The petition was filed and a hearing was held on September 27, 2001. At the hearing, G.L.H., Murry F. and several witnesses testified. The prosecution presented the theory that the two boys were fighting over a girl, while the defense claimed it was just horseplay between two boys which resulted in a tragic accident.
¶ 4. Murry F. testified that he went to Captain D’s that night to get something to eat and catch a ride home. He testified that two girls came in, and he began speaking with one of them. While he was talking to one of the girls, G.L.H. came up to him and asked him why he was trying to “hit on his girl.” He testified that at first he thought G.L.H. was kidding, but then G.L.H. asked him to go outside. The two of them and several others then left the restaurant. Murry F. testified that he remembered G.L.H. standing on the grass and saying “come on, come on.” He walked to the edge of the concrete, stepped on the grass, and that was the last thing he could remember. He did not remember G.L.H. pushing or striking him. Additionally, Murry F. admitted that he lied in his original police statement when he said that G.L.H. pushed him from the front and that he was facing him. He claims he lied because he was under a lot of “pressure.”
¶ 5. G.L.H. testified that everyone was “just playing around,” no one was mad and there was no confrontation. He testified that he did not say anything to Murry F. about a girl. He admitted that he did run up to Murry F. and push him. However, he thought Murry F. would just “roll down a hill.” G.L.H. contended that he was not aware of the drop off. Once he saw Murry F. falling, G.L.H, tried to catch him. G.L.H. denied hitting Murry F. with his fist and said that it was just horseplay. G.L.H. testified that he did not intend to hurt Murry F.
¶ 6. Jeremy Shells and M.P., a minor, testified for the prosecution. Shells was employed at Captain D’s and was working that night. Shells testified that he did not see G.L.H. hit Murry F., but he did see G.L.H. run toward Murry F. and bump into him. However, in his statement to the police, Shells stated that G.L.H. came up behind Murry F. and hit him very slightly with his fist behind the right ear. He also testified that he did not hear an argument and that G.L.H. was not mad or angry.
¶ 7. M.P. testified that he was talking with Murry F. about a girl whose boyfriend was friends with G.L.H. M.P. saw G.L.H. and the girl’s boyfriend go outside together and told Murry F. that he would be “foolish to go outside.” M.P. did not know what happened immediately before the fall, but testified that he was not aware of any angry words between G.L.H. and Murry F. M.P. testified that he saw G.L.H. go towards Murry F. and run into him. Then, he saw Murry F. fall off the ledge. He also testified that G.L.H. indicated he was just playing around and did not mean to cause the injury.
¶ 8. Barry Douglas testified for the defense. Douglas was at Captain D’s that night to get something to eat. He claimed that he did not “hang out” with Murry F. and G.L.H., but he knew who they were. Although he did not witness the actual incident, he testified that he observed no problems or anger between the two while he was in the restaurant. He testified that he saw no conflict that could have led to a fight. Douglas did come to the aid of Murry F. after the fall, and he testified that G.L.H. looked very surprised by the accident.
¶ 9. The youth court judge found sufficient proof that G.L.H.’s conduct was a *112 reckless act, and he found G.L.H. to be in violation of the reckless portion of the simple assault statute. The youth court judge found “[tjhere was a reckless touching that ended up being an assault with unforeseen and most probably, I am convinced, unintended serious injury.” As a result, the youth court judge found G.L.H. to be a delinquent child, within the meaning of the Mississippi Youth Court Act, and directed that he be placed on supervised probation with the Department of Youth Services. The court also sentenced G.L.H. to thirty-two hours of public service in the juvenile work program and required that he pay $200 in attorney’s fees.
¶ 10. G.L.H. submitted a timely notice of appeal with a motion to appeal with supersedeas. The motion to appeal with supersedeas was denied.
ANALYSIS AND DISCUSSION OF THE LAW
I. WHETHER THE YOUTH COURT’S ORDER ADJUDICATING G.L.H. AS A DELINQUENT CHILD AND FINDING HIM GUILTY OF SIMPLE ASSAULT WAS IN ERROR.
¶ 11. G.L.H. first challenges the sufficiency of the evidence. When the legal sufficiency of the evidence is challenged, we will not retry the facts. Rather, we must assume that the fact-finder believed the State’s witnesses and disbelieved any contradictory evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993); Griffin v. State, 607 So.2d 1197, 1201 (Miss.1992). To determine whether there is an insufficiency as to any element of the offense, we consider all the evidence as to that element in the light most favorable to the State. McClain, 625 So.2d at 778. All credible evidence which is consistent with the defendant’s guilt “must be accepted as true,” and the State is “given the benefit of all favorable inferences that may be reasonably drawn from the evidence.” Id. This Court will reverse only where, “with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.” Id.
¶ 12. Under Mississippi law, “a person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm.” Miss.Code Ann. 97-3-7(1) (Rev.2000). Subsection (a) is the operative provision of the simple assault statute in this case.
¶ 13. G.L.H. argues that the prosecution failed to prove all the elements of the crime, specifically intent. G.L.H. claims that the prosecution must prove, beyond a reasonable doubt, that G.L.H. intended to cause bodily injury to Murry F. G.L.H. further asserts the judge himself stated in his opinion that he was not convinced there was proof of intent, and still found G.L.H. guilty on the basis of recklessness. G.L.H. also argues that the evidence presented failed to rise to the level of recklessness, and the judge erred in this finding as well.
¶ 14. The Mississippi Supreme Court has held that it is not necessary to prove intent to convict a person of simple assault. The recklessness or negligence contemplated by the statute is in the act itself. Nobles v. State, 464 So.2d 1151, 1154 (Miss.1985). It does not refer to the subjective intent of the defendant. Id. Simple assault is the proper charge when the element of intent is absent. Markham v. State, 209 Miss. 135, 136, 46 So.2d 88, 89 *113 (1950). Since the judge found G.L.H. guilty of simple assault under the recklessness prong of the statute, this argument is without merit.
¶ 15. This Court must now consider whether sufficient evidence existed to prove that G.L.H.’s actions were reckless. G.L.H. points to the contradictory testimony. G.L.H. challenges the credibility of Murry F. because he lied in his initial statement to the police and questions the testimony of the prosecution’s witnesses. The witnesses’ recollection of events varied. G.L.H. claims that these contradictions prove that the testimony of the prosecution’s witnesses were not reliable.
¶ 16. Where testimony is conflicting, the trial judge sitting as trier of fact, is in the best position to weigh the testimony and decide which is more credible. Carter v. Carter, 735 So.2d 1109, 1114(¶ 19) (Miss.Ct.App.1999). In a bench trial, the judge is “the jury” for all purposes of resolving issues of fact. Evans v. State, 547 So.2d 38, 40 (Miss.1989). In the present case, the judge reviewed each witnesses’s testimony and determined that:
The prosecution has a theory that it was a fight over a girl. The defense has a theory it was strictly horseplay. Somewhere in between those two extremes I am convinced that there is proof beyond a reasonable doubt that it was a reckless action; and that the juvenile is found to be in violation of the reckless aspect of the simple assault statute....
¶ 17. While it is apparent that accounts of the event differed, the most compelling testimony is G.L.H.’s admission that he pushed Murry F. No other witness disputed G.L.H.’s admission. In fact, the testimony was clear that G.L.H. either pushed or hit Murry F. causing him to sustain the injuries. G.L.H. testified that:
I seen Michael standing — standing on the hill. So I go run up and — push him so he will, like roll down the hill. So I ran up and pushed him. And about that time I pushed him, I seen that it was a drop-off, so I tried to catch him, but it was too late. He had already fell.
While G.L.H. claims that he was “just playing around,” this type of behavior certainly is capable of being considered “recklessness.” Recklessness is defined as “[cjonduct whereby the actor does not desire the consequence but nonetheless foresees the possibility and consciously takes the risk; recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing.” Black’s Law Dictionary 526 (Pocket ed.1996). In Maye v. Pearl River County, the Mississippi Supreme Court held that recklessness “may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive or negligence.” Maye v. Pearl River County, 758 So.2d 391, 393(¶ 16) (Miss.1999).
¶ 18. Based on these definitions, G.L.H.’s behavior was careless, inattentive and rises to the level of recklessness. G.L.H. may not have desired the consequence of the severe injury Murry F. sustained, but it was certainly foreseeable that pushing a person down a hill may cause serious injuries. Sometimes tragic injuries result from “horseplay.” Unfortunately, Murry F. sustained serious injuries because G.L.H. consciously took a risk by pushing or striking Murry F., intending that he roll down a hill.
¶ 19. G.L.H. relies on Williams v. State, 797 So.2d 372 (Miss.App.2001). In Williams, the defendant was charged with four counts of simple assault on four law enforcement officers. Id. at 374(¶ 2). The jury found Williams guilty of one count of disorderly conduct, one count of simple assault. Id.
*114 ¶ 20. G.L.H. points out that, in Williams, the defendant was found not guilty of simple assault because he did not intend to injure one of the police officers, but was only reacting to having mace being sprayed in his face. G.L.H. argues that because he did not intend to injure Murry F., he cannot be guilty of simple assault. While it is true the jury found Williams not guilty of simple assault with regard to this particular count, they did find him guilty of disorderly conduct and guilty of simple assault on a separate count. Additionally, this case is fact specific and cannot be compared to the case sub judice. Here, no intervening force existed that would have caused G.L.H. to have had a physical reaction that was out of his control. Nothing in the present case indicates any standard or precedent which would suggest that G.L.H.’s behavior was not reckless.
¶ 21. We find sufficient evidence existed for the trial judge, acting as the jury, to conclude that G.L.H. was guilty of simple assault. Therefore, we find no merit in this assignment of error.
II. WHETHER THE YOUTH COURT’S DENIAL OF ALLOWING THE APPEAL TO PROCEED SU-PERSEDEAS CONSTITUTES A DENIAL OF DUE PROCESS, AND AN ABUSE OF DISCRETION.
¶ 22. Appeals from Youth Court are governed by Miss.Code Ann. § 43-21-651(2) (Rev.2000), which provides:
The pendency of an appeal shall not suspend the order or decree of the youth court regarding a child, nor shall it discharge the child from the custody of that court or of the person, institution or agency to whose care such child shall have been committed, unless the youth court or supreme court shall so order. If appellant desires to appeal with su-persedeas, the matter first shall be presented to the youth court. If refused, the youth court shall forthwith issue a written order stating the reasons for the denial, which order shall be subject to review by the supreme court. If the supreme court does not dismiss the proceedings and discharge the child, it shall affirm or modify or reverse the order of the youth court and remand the child to the jurisdiction of the youth court for placement and supervision in accordance with its order, and thereafter the child shall be and remain under the jurisdiction of the youth court in the same manner as if the youth court had made the order without an appeal having been taken.
¶ 23. This Court has previously concluded that “an appeal does not stay the enforcement of the youth court’s disposition of the case unless supersedeas is specifically granted by either the youth court or the appellate court on review if the youth court refuses to grant it.” In the Interest of J.P.C. v. State, 783 So.2d 778, 781(¶ 8) (Miss.Ct.App.2001). This Court expounded on this principle by holding:
It does not stand to reason that the legislature, in establishing the procedures for resolving appeals from youth court, would set up a mechanism to obtain supersedeas during an appeal if the question could be unilaterally short-circuited by the juvenile simply by filing a notice of appeal immediately after the entry of the adjudication order and before the court could undertake the required disposition.

Id.

¶ 24. Accordingly, G.L.H. was required to immediately appeal the decision of the trial court refusing his motion to appeal supersedeas to the Mississippi Supreme Court, before proceeding with his appeal on the merits. The supreme court could *115 have then reviewed the order of the youth court and determined if the judge abused his discretion. Since G.L.H did not do this, his claim on this issue is procedurally barred.
¶ 25. THE JUDGMENT OF THE LEE COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ„ CONCUR.