HAZOURI, J.
Michael C. Roper appeals from his conviction and sentence for felony possession of cocaine, misdemeanor possession of drug paraphernalia and misdemeanor resisting arrest without violence. Roper raises five points on appeal. We reverse and remand for a new trial on all three convictions as the trial court erred in permitting the state to elicit from a defense witness that he was incarcerated at the time of his testimony.
At trial, Officer Ivory Nelson of the Fort Lauderdale Police Department testified that he was patrolling in his police car at approximately 10:00 A.M. on October 1, 1998, when he saw Roper standing by the roadside near a group of people with a glass tube in his mouth, to the end of which he held a lighted cigarette lighter. It appeared to Nelson that Roper was smoking crack cocaine. Nelson stopped his patrol car and got out. Roper dropped the tube and threw away the lighter. Nelson advised Roper that he was under arrest and grabbed his wrist. Roper jerked away. He was taken into custody and Nelson recovered the tube which field tested positive for cocaine. In addition to Officer Nelson, the state called a police chemist who testified that the lab test confirmed that crack cocaine was in the glass tube. No fingerprints were ever obtained from the glass tube.
Roper’s only witness, Albert Flowers, testified he witnessed Nelson’s encounter with, and arrest of, Roper. His testimony contradicted that of Officer Nelson. Flowers testified that Nelson arrested Roper without any justification; Roper had done nothing illegal, did not have a glass tube, was not smoking anything and did not drop or throw anything away as Officer Nelson approached. Flowers further testified that he was in such close proximity to Roper (close enough to shake hands) that if any of the actions that Nelson testified Roper had engaged in had occurred, he, Flowers, would have seen them. He also testified that he did not see Officer Nelson locate and recover a glass tube at the scene.
Before cross-examining Flowers, the prosecutor asked for a side bar conference so that she could proffer to the court that she wished to ask Flowers where he currently resided knowing that Flowers was currently incarcerated. The trial court instructed the prosecutor not to ask that question if the answer was that Flowers *489 was in jail. For some inexplicable reason,[1] the trial court reversed itself and, over objection, permitted the prosecutor to ask Flowers where he was currently living. Flowers answered that he was currently residing at the South Florida Reception Center and again over defense objection the prosecutor elicited that Flowers had been residing at the South Florida Reception Center for approximately two months.
In final argument and in rebuttal, the prosecutor focused on the conflict in the testimony between Officer Nelson and Albert Flowers. In challenging the credibility of Flowers, the prosecutor pointed out that Flowers had testified that he currently resided at the South Florida Reception Center and that this was a factor that the jury should take into consideration in evaluating Flowers’s credibility. In rebuttal, the following argument was made by the prosecutor:
Now, when you talk about bias, when you consider the credibility of a witness, what is Albert’s bias? He is a friend of the defendant. That’s something for you to consider. Where is he living? He is living at South Florida Reception Center. Maybe he has a bias against the state or officers. That’s something for you to consider as well. It is a real possibility. That’s something for you to consider.
Roper asserts that the trial court erred in permitting the state during cross examination of Flowers to inquire where he was currently residing, knowing that he was in jail, because this was improper impeachment of a critical defense witness. We agree.
Generally, a witness may be impeached by reference to a prior conviction of certain crimes. See § 90.610, Fla. Stat. (1997). The question asked by the prosecutor and the answer given by Flowers did not comport with the requirement of section 90.610. The information elicited clearly suggests that Flowers had a criminal record and, therefore, was untrustworthy. Thus, the state was able to impeach Flowers without establishing that he had ever been convicted of a crime which qualified as proper impeachment under section 90.610.
The state asserts that under section 90.608, Florida Statutes (1997), it can attack the credibility of a witness by “showing that the witness is biased.” The state cites Howard v. State, 397 So.2d 997 (Fla. 4th DCA 1981), in support of its argument that its questions were meant to elicit relevant information that showed bias on the part of the witness. In Howard, a witness to the defendant’s battery on a police officer gave testimony tending to show that the police may have been the aggressors. On- cross-examination, the witness was asked about being convicted of obstructing the police to which the defense objected as improper impeachment. The court allowed the prosecutor to ask if he had ever been convicted of a crime to which the witness went into a long explanation of *490 what happened. On appeal, this court stated:
The testimony and record of conviction objected to by appellant were introduced to show that the witness, Green, had a bias or prejudice against law enforcement personnel. To show bias it is obviously necessary to show the nature of acts by the witness which evidence such bias. To do this it is necessary to show and explain the nature of the crime of which the witness was convicted. Thus we agree with the trial court’s conclusion that conviction of a specified crime may be introduced to show bias of a witness.
The trial court also determined, on the facts 'presented, that, in this particular case, the conviction of obstructing justice tended to demonstrate bias. This finding of fact comes to us clothed with a presumption of correctness and is substantiated by evidence in the record.
We limit our holding to the facts of the present case and do not consider whether a similar rule prevails in the case of prior convictions of a criminal defendant. As to a witness in a criminal proceeding we determine that evidence of the nature of the crime for which the witness has previously been convicted may, under appropriate circumstances, as here, be admissible to demonstrate bias on the part of the witness.
Id. at 998. (Emphasis added). We find the facts in Howard distinguishable from the instant case as the state did not show how Flowers’s incarceration in the South Florida Reception Center constituted bias. Mere incarceration without more does not support the state’s claim of bias.
More on point is the case of Reeves v. State, 711 So.2d 561 (Fla. 2d DCA 1997). In Reeves, the defendant was charged with aggravated battery on a co-worker. The state called the victim and another coworker to testify. The defendant called his brother who saw the fight from across the street. The testimony presented was, therefore, a pure credibility issue for the jury. The defendant’s brother was jailed for driving while his license was suspended while the defendant was in jail awaiting his trial in this matter. Defense counsel made a motion in limine to exclude any mention of the brother’s stay in jail at the same time as the defendant. The trial court denied the motion saying it would let the prosecutor put forth some evidence to raise the reasonable inference that there was an opportunity for the brothers to talk. On cross-examination, the prosecutor elicited testimony that the brother was in jail on a traffic offense at the same time as the defendant. The state had no evidence that the brothers had actually spoken. The district court held that “[ajllow-ing the prosecutor to inform the jury about the brother’s incarceration on a traffic offense served only to embarrass the only defense witness and discredit him. The brother’s incarceration after an arrest for a traffic offense was merely a collateral matter which did not tend to affect his credibility.” Id. at 562. The state argued that the evidence was elicited solely to show bias. The district court felt that the familial status was enough to show bias without the need to show their simultaneous incarceration.
Under the facts of the instant case, the prosecutor was permitted to show that Flowers was incarcerated, not that he had been convicted of a felony. As in Reeves, this was a collateral matter that did not affect his credibility and, therefore, was irrelevant. Further, there was no attempt by the state to show that being incarcerated resulted in any bias against law enforcement as the conviction for obstructing justice tended to show bias in Howard. The trial court erred in permitting these questions.
The state asserts that if this was error, it was harmless. We disagree. There was considerable conflict between the testimony of Officer Nelson and Albert Flowers. The credibility of each was an important factor for the jury to consider. Although there was physical evidence (the *491 cocaine residue in the tube) of a crime, the defense was that it was planted. Flowers said that there was no tube. It is undisputed that there was no fingerprint examination made of the tube. Either Roper had a glass tube or the police planted it and Flowers was telling the truth. Damaging Flowers’s credibility by revealing he was incarcerated may well have weighed in favor of the officer’s credibility and prejudiced Roper. The state has not met its burden of proving that the error was harmless beyond a reasonable doubt. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). As to the remaining points on appeal we affirm as to points I, II and III and find that point Y is moot.
Reversed and remanded for a new trial.
KLEIN, J., concurs.
POLEN, J., concurs specially with opinion.

. Side bar colloquy:
Prosecutor: Judge, I wanted to ask for the side bar to make a proffer before the jury, I want to ask him where he works and where, he resides currently. And I wanted to know before I said that—
The Court: You can ask him what his address is. And he can give you his home.
Prosecutor: And I can ask him where he lives, and if he says he lives in the jail—
The Court: You want him to testify that he is in prison? Good try.
Prosecutor: Is there any objection?
Defense counsel: What?
Prosecutor: If I ask him where he lives and he says, "Jail.”
Defense counsel: You can ask him his address.
Prosecutor: And where is that.
Defense counsel: He is on probation.
Prosecutor: How about where he currently lives?
The Court: You want him to take [sic] say the Broward County Jail?
Prosecutor: I believe that’s where he is living.
Defense counsel: He is not.
Prosecutor: Which jail is he in?
The Court: Don’t ask the question.
Prosecutor: I can’t ask him where he currently lives?
The Court: I guess you can.